JOHN VENDITTI and RUTH VENDITTI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Venditti v. Commissioner
Docket No. 9583-78
United States Tax Court
T.C. Memo 1981-390; 1981 Tax Ct. Memo LEXIS 354; 42 T.C.M. (CCH) 519; T.C.M. (RIA) 81390; July 29, 1981. Robert A. Shupack, for the petitioners. Jan S. Neiman, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined deficiencies in petitioners' taxes plus additions to tax for fraud under section 6653(b) [1] as follows: Addition to Tax
Year
Deficiency
Under Sec. 6653(b)
1968
$ 8,963.97
$ 4,481.98
1969
10,492.15
5,246.07
1970
16,395.37
8,197.68
After concessions, the remaining issues are: (1) whether petitioners are entitled to a dependency *356 exemption for Ruth Venditti's father; (2) whether Ruth Venditti is an "innocent spouse" for the years 1969 and 1970; [2] (3) whether the bases of rental properties for depreciation purposes is greater than the amount allowed by respondent; and (4) whether petitioners are entitled to use income averaging. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. John ("petitioner") and Ruth Venditti, husband and wife, resided in Ft. Lauderdale, Florida, when they filed their petition. Petitioner was engaged in the home repair and building business during all relevant times. From 1964 through 1967, petitioner primarily repaired homes for Washington Federal Savings and Loan ("Washington Federal"). Washington Federal supplied all materials used on its jobs. Washington Federal required petitioner to supply labor in exchange for a set fee per employee per hour. Washington Federal always paid petitioner by check. Sometime around 1967 petitioner began doing bid work for *357 the Federal Housing Administration ("FHA"). The arrangement with the FHA required ptitioner to provide both labor and materials. The FHA paid petitioner on a per job basis by United States Treasury check. Petitioner acquired materials for the FHA jobs from various sources such as lumber yards, paint stores, etc. Petitioner generally paid cash for these supplies. In 1968 petitioner began constructing residential properties for rent. From 1968 through 1970 petitioner built five duplexes and one triplex in Broward County, Florida. To save money in the construction of these units, petitioner purchased materials from flea markets, through newspaper advertisements, from large contractors with surplus inventories, etc. Most of petitioner's purchases were made in cash. Through the combination of buying large quantities of materials and purchasing from cheap sources, petitioner saved money on the construction of these buildings. Each of the five duplexes had 1,635 square feet of living space and 400 square feet of covered patio. The triplex had 2,315 square feet of living space and 400 square feet of covered patio. Petitioners reported their cost bases in the duplexes and triplex *358 on their 1970 joint income tax return as follows: Address
Type
Basis
5908-10 McKinley St.
Duplex
$ 21,877.83
1421-23 N. 59th Terrace
Duplex
21,877.83
1411-13 N. 59th Terrace
Duplex
22,000.00
1414-16 N. 59th Terrace
Duplex
22,000.00
1417-19 N. 59th Terrace
Duplex
26,364.73
1410-12 N. 59th Terrace
Triplex
28,000.00
The parties have stipulated that the bases in the duplexes located at 5908-10 McKinley St., 1421-23 N. 59th Terrace and 1411-13 N. 59th Terrace and the basis in the triplex at 1410-12 N. 59th Terrace should be increased by $ 779 each as a result of petitioner's failure to capitalize the closing costs incurred in connection with the acquisition of these parcels. Petitioners filed joint income tax returns for the years 1964 through 1970. Petitioners reported taxable incomes of $ 3,016.86, $ 1,984.06, $ 3,528.86, and $ 14,538.02 for the years 1964, 1965, 1966 and 1967, respectively. Petitioner was convicted under sections 7201 and 7206(1) of willfully attempting to evade or defeat income tax for the years 1968, 1969 and 1970, and of willfully making and subscribing false individual income tax returns for the same years. [3] On their *359 1969 and 1970 tax returns petitioners omitted gross income attributable to petitioner in excess of 25 percent of the gross income stated in the return. Ruth Venditti did not testify at trial because of a heart condition. During the years 1969 and 1970 Ruth maintained petitioners' family home, raised their children, cared for her father and participated extensively in church-related activities. ruth was not involved in petitioner's repair or construction business, but she did do much of the family banking (e.g., setting up savings accounts and making deposits). On June 6, 1968, petitioner had assets worth $ 151,990, liabilities of $ 31,308, and a net worth of $ 120,682. Petitioners had three joint savings accounts with aggregate balances of $ 12,577.74, $ 29,496.29 and $ 56,375.58 on December 31, 1968, 1969 and 1970, respectively. Ruth knew of all three of these accounts. Some of the funds deposited in these accounts came from petitioner's unreported income in 1968, 1969 and 1970. Petitioners acquired a new residence in 1970 *360 worth approximately $ 50,000. Antion DeJesus, Ruth Venditti's father, resided in petitioners' home in 1968, 1969 and 1970. During this time petitioners paid for all of Antion's living expenses. Antion earned interest from savings accounts in the amounts of $ 605.67, $ 659.58 and $ 732.90 in 1968, 1969 and 1970, respectively. In the notice of deficiency, respondent determined, inter alia, that petitioners were not entitled to an exemption for Antion DeJesus. In their petition, petitioners asserted that: (1) they are entitled to a dependency exemption for Antion; (2) Ruth Venditti is an "innocent spouse" and thus not liable for the 1969 and 1970 deficiencies; and (3) they are entitled to use income averaging under section 1301 et seq. In an amended petition, petitioners asserted that the bases of the duplexes and triplex are greater than reported on their 1970 return. OPINION The first issue is whether petitioners are entitled to a dependency exemption for Antion DeJesus for the years 1968, 1969 and 1970. Section 151(e)(1)(A) provides an exemption for a dependent whose gross income was less than $ 600 in 1968 and 1969 and less than $ 625 in 1970. Antion DeJesus earned *361 interest income of $ 605.67, $ 659.58 and $ 732.90 in 1968, 1969 and 1970, respectively. Since Antion had gross income in excess of the statutory limits, petitioners are not entitled to the claimed dependency exemption. The second issue is whether Ruth Venditti was an "innocent spouse" and therefore not liable for the 1969 and 1970 deficiencies. Section 6013(e) provides: (1) IN GENERAL.--Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable *362 to such omission, Then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. Petitioners filed joint returns for 1969 and 1970 and omitted therefrom amounts properly includible therein which are attributable to petitioner and which are in excess of 25 percent of the gross incomes stated in the returns. The relevant inquiries, therefore, are (1) whether Ruth Venditti has established that in signing the returns she did not know of, and had no reason to know of, the omissions; and (2) whether, taking into consideration all facts and circumstances, it is inequitable to hold her liable for the tax attributable to the omissions. The burden of proof on this matter rests on Ruth Venditti. . Ruth Venditti did not testify at trial because of a heart condition. Michael Venditti, her son, testified that she was not involved in his father's business. Petitioner testified that his wife was unaware of the omitted income. Respondent asserts that Ruth Venditti has not *363 met her burden of proof, and we agree. Ruth's lack of involvement in petitioner's business does not, by itself, establish that she did not know of the omitted income. Petitioner testified that his wife did not have any knowledge of the income, but petitioner lacked credibility. On the other hand, Ruth did some of the family banking--set up savings accounts and made deposits. We conclude that petitioners have not established that Ruth did not know of the omitted income. We similarly find that Ruth Venditti has not proved that she had no reason to know of the omitted income. In determining whether an individual reasonably should have known of the omitted income, the standard to be applied is whether a reasonable person under the taxpayer's circumstances could be expected to know of the omission. . Petitioner presented no credible evidence of Ruth's lack of knowledge of the omitted income. On the other hand, Ruth knew of three joint savings accounts which contained substantial sums of money and that petitioners purchased a new home in 1970. Accordingly, petitioners have not met their burden under section 6013(e)(1)(B) *364 and Ruth is not an innocent spouse for the years 1969 and 1970. [4]
The third issue is whether the bases of the duplexes and triplex are greater than shown on petitioners' 1970 return as adjusted by respondent. The bases of the duplexes and triplex are their costs. Secs. 167(g), 1011(a), and 1012. The burden of proving the costs of the duplexes and triplex is on petitioner. . In the present case, petitioner has attempted to prove that his costs were greater than originally reported by showing that many of the items used in construction were purchased with cash which he failed to take into account. In addition, petitioner relies on the testimony of Lee W. Holliday, a professional engineer and general *365 contractor with experience in Broward County. According to Holliday, a conservative estimate for the cost of the units would be $ 14 per square foot of living space plus $ 9 per square foot of covered patio. Because many of his expenses were paid for with cash, petitioner, relying on , requests us to find that he incurred costs in constructing the units in excess of the cost reported on his 1970 return. Petitioner further urges that a reasonably accurate estimate for the total costs of the units can be reached using Holliday's figures. We disagree. Although we have found that some of the construction materials used by petitioner were purchased with cash, petitioner has not demonstrated that such purchases were not accounted for in the cost bases reported on the 1970 return. No records of payments for material, labor or other costs were presented. There was no evidence of any kind to substantiate the alleged costs. [5] When determining cost we are concerned with actual cost, not an estimate of average cost. Holliday's testimony was neither convincing nor relevant. Just because the average cost of a depreciable *366 asset is a given amount does not mean that the cost basis for depreciation of every such asset must be that amount. Since petitioner has not demonstrated that he incurred any costs in excess of those reported on his 1970 tax return, the principles of , are inapplicable. [6] Therefore, we find that petitioners' bases are as allowed by respondent. The final issue is whether petitioners are entitled to use income averaging for the years 1968, 1969 and 1970. The provisions of sections 1301 through 1305 allow taxpayers the benefit of *367 income averaging if they meet certain requirements. The "average base period income" must be established before petitioners can use income averaging for 1968, 1969 and 1970. The base period is the four tax years immediately preceding the tax year to be averaged. Sec. 1302(c)(2). The taxable income to be used in each base period year is the correct taxable income for such year, not the taxable income as reported, , and the burden of proving the correctness of the base period income is on petitioner. [7]
Respondent contends that the petitioners have failed to establish that their reported taxable incomes for the years 1964 through 1967 were their correct taxable incomes and thus are not entitled to income average, and we agree. Petitioners rely on petitioner's testimony, their 1964 through 1967 returns, and on the fact that their sources of income during 1964 through 1967 were from Washington Federal and the FHA, both of which paid petitioner only by check. This evidence falls short of establishing that petitioners' correct taxable incomes *368 were as reported. First, petitioner's statement that, to the best of his knowledge, his returns for the years 1964 through 1967 were correct was inadequate. As mentioned earlier, petitioner's testimony was not credible. We are not required to accept petitioner's testimony at face value, even if uncontradicted, where it is "improbable, unreasonable or questionable." . Second, petitioners introduced no evidence explaining or supporting their 1964 through 1967 returns. Petitioners failed to introduce any books or records or the testimony of their tax preparer. Third, the mere fact that petitioner's business income came from sources which paid them by check does not, standing along or in conjunction with the limited additional evidence introduced in this case, mean that petitioners correctly reported their taxable incomes. At a minimum, petitioners should have established the existence of an accounting procedure whereby all checks received from Washington Federal and the FHA were accounted for in their business income. Finally, petitioner had a net worth of $ 120,682 on June 6, 1968, yet his reported taxable *369 incomes for the immediately preceding four years indicate that such an accumulation of wealth was not the result of his reported income from those years. Petitioner has failed to offer any other explanation for his net worth. He did testify that he was not a man of great wealth in 1964. We conclude that petitioner's unsupported testimony and the fact that business income was received by checks are insufficient to prove that petitioners' taxable incomes as reported on their 1964 through 1967 joint returns reflect their correct taxable incomes for those years. [8] Therefore, petitioners are not entitled to use income averaging for the years 1968, 1969 and 1970. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue. The fraud penalties are asserted against John Venditti only and not against his wife.↩
2. The innocent spouse issue is not before us in 1968 because the parties stipulated at trial that the 25 percent requirement of section 6013(e)(1)(A) was not met for the year.↩
3. See , reh. denied .↩
4. Moreover, Ruth Venditti benefited from the omitted income by virtue of the fact that some of the funds in petitioners' joint savings accounts were attributable to the omitted income. , affd. without published opinion . Hence, she has not met the requirement of section 6013(e)(1)(C).↩
5. See . In addition, it should be noted that the evidence presented indicated that petitioner used every opportunity to save money on the construction of these units. Accordingly, the fact that petitioner's reported costs were less than Holliday's average costs comports with the evidence. ↩
6. Similarly, petitioners' reliance on , does not warrant a different result because we are not convinced that petitioner incurred costs in excess of those reported.↩
7. .↩
8. In , we also found that the taxpayer failed to carry his burden of proof. In that case, as here, the taxpayer presented no documentation to support his income and expenses and his alleged correct incomes were improbable in light of his net worth.↩